```
                 UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF MISSISSIPPI
                       JACKSON DIVISION


MICHAEL D. ROSAMOND, SR.                              PLAINTIFF


VS.                            CIVIL ACTION NO. 3:10CV263TSL-MTP


GREAT AMERICAN INSURANCE
COMPANY                                               DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Great American Insurance Company for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and related motions by defendant to strike the affidavits of two of plaintiff's experts, Adam Lewis, M.D., and David Stegall. Plaintiff Michael D. Rosamond, Sr. has responded to each of the motions and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, finds and concludes as follows.

Plaintiff Michael D. Rosamond, Sr. worked for many years as an over-the-road truck driver. During much of that time, he suffered from chronic back problems and in fact, prior to the injury at issue in this case, he had undergone three back surgeries, including a 2001 lumbar spinal fusion surgery. On December 24, 2006, as he was preparing to leave on a truck-driving job, plaintiff obtained an occupational accident insurance policy

from Great American. In general terms, the policy provides benefits for a physical injury "caused by an Occupational Accident ... which results directly and independently of all other causes in a Covered Loss." On January 2, 2007, while this policy was in effect, plaintiff injured, or re-injured his back while attempting to unload an item of furniture from his trailer.

A week following this incident, plaintiff went to see his family physician, Dr. Augustus Soriano, complaining of back pain; and a month later, he was seen by Dr. Adam Lewis, plaintiff's neurosurgeon who had performed his previous back surgeries. Dr. Lewis ultimately concluded that plaintiff "had a fibrous nonunion," or incomplete fusion from the prior surgery, "which was exacerbated by [the] work related injury," and for which surgery was indicated.

Initially, Great American paid plaintiff disability benefits under the policy and provided payment of his medical expenses relating to the injury. However, after several months of payments, it sought an independent medical examination (IME), on the basis of which it discontinued payment of disability benefits and declined payment for plaintiff's back surgery. Plaintiff filed the present action, alleging bad faith denial of coverage.

Defendant's policy excludes from coverage "any injury, accident, expense, or loss caused in whole or in part by, or resulting in whole or in part from ... any Pre-Existing

2

Condition...."  The policy defines "Pre-Existing Condition" as "a health condition for which an Insured Person has sought or received medical advice or treatment at any time during the twelve months immediately preceding his or her effective date of coverage under this Policy."  The premise of defendant's motion, to the extent it seeks summary judgment on the coverage issue, is that plaintiff's injury (according to plaintiff's version of the facts) was caused at least in part by a fibrous nonunion, or pseudoarthrosis, and that this was a pre-existing condition as defined in the policy, since plaintiff "received medical advice or treatment" relating to this condition by Dr. Soriano in November 2006, just sixty days prior to his claimed occupational accident.  Defendant's motion cannot be granted.

Dr. Soriano's records do reflect that during his office visit in November 2006, plaintiff had complaints of "pain in his low back."  However, in the court's opinion, defendant has not shown that there exists no genuine issue of material fact as to whether plaintiff sought or received medical advice or treatment from Dr. Soriano in November 2006 for the specific condition, fibrous nonunion (whether diagnosed or not), which is alleged to have contributed to the injury for which he subsequently underwent surgery and for which coverage is sought.  Obviously, the fibrous nonunion/pseudoarthrosis which plaintiff alleges contributed to his injury pre-dated the claimed occupational accident; but under

the policy, that condition is a "Pre-Existing Condition" only if plaintiff received medical advice and treatment for that condition within the twelve months preceding the accident. Although it is undisputed plaintiff had suffered from back problems for many years prior to the January 2007 accident, the only medical advice or treatment he received relating to his back in the twelve months preceding the accident was the November 2006 visit to Dr. Soriano. And the court cannot conclude as a matter of law that this visit related to the pseudoarthrosis, rather than to back pain from some other cause. Therefore,ced the court will deny defendant's motion for summary judgment.[1]

Defendant, alternatively, seeks summary judgment on plaintiff's claims for extra-contractual and punitive damages. The court has carefully considered defendant's arguments and evidence, and is unable to conclude at this time that summary judgment on these issues is proper. This does not mean the court has determined that the jury will be given a punitive damages instruction or one that deals with extra-contractual damages; it means only that the court is not able *at this time* to conclude as a matter of law that Great American undertook an adequate

---

[1] As defendant has moved to strike the affidavit of Dr. Adam Lewis, submitted by plaintiff in support of his response to defendant's motion, the court notes that it would reach the conclusion that summary judgment should be denied without reference to the challenged opinions expressed in Dr. Lewis' affidavit.

investigation of the claim which culminated in a legitimate and arguable reason for denying this claim.  See Butcher v. Allstate Ins. Co., 2009 WL 261826, 5 (S.D. Miss. 2009) (denying summary judgment on extra-contractual and punitive damages where court could not determine existence vel non of legitimate or arguable reasons as a matter of law prior to hearing testimony).  The court will revisit this issue prior to submission to the jury.  See id.

<u>Motion to Strike Affidavit of Dr. Adam Lewis</u>

In support of his response to the motion, plaintiff has submitted an affidavit from Dr. Adam Lewis, one of his treating physicians, in which Dr. Lewis asserts certain opinions which, as plaintiff implicitly acknowledges, are not contained in Dr. Lewis' office records but which are contained in plaintiff's expert designation of Dr. Lewis.  Specifically, Dr. Lewis states:

> A review of Dr. Soriano's medical records (specifically records from 2005-2005) clearly indicate that Mr. Rosamond did not seek or receive medical advice or treatment for a fibrous nonunion during that time period.
>
> A review of Dr. Soriano's November 2, 2006 record demonstrates a diagnosis of status post-cervical fusion.  This record does not change my opinion that Mr. Rosamond suffered a new, work-related injury that necessitated surgery.  This November 2, 2006 record does not indicate treatment by Mr. Rosamond for a fibrous nonunion.
>
> In my review of Mr. Rosamond's medical records from other medical providers I have not seen any medical records indicating that Mr. Rosamond sought or received medical advice or treatment within the twelve months prior to December 2006 for a fibrous nonunion or any of

5

>    the conditions which necessitated his October 2007 surgery.

Defendant has moved to strike Dr. Lewis' affidavit, contending that since plaintiff's expert designation of Dr. Lewis was not accompanied by a signed written report from Dr. Lewis, then Dr. Lewis' expert testimony is limited in scope to the opinions contained in his office records.  The court acknowledges there is ample authority espousing this position. <u>See</u>, <u>e.g.</u>, <u>Francois v. Colonial Freight Systems, Inc.</u>, Civ. Action No. 3:06CV434WHB-LRA, 2007 WL 4564866, 5 (S.D. Miss. Dec. 21, 2007) (explaining that "if the attorney wishes to elicit from the treating physician an opinion not set forth in the physician's office records, he should submit a written report signed by the treating physician as required by the rules or suffer the consequence of having an objection to that opinion sustained at trial") (quoting <u>Robbins v. Ryan's Family Steak Houses East, Inc.</u>, 233 F.R.D. 448 (S.D. Miss. 2004)); <u>Mitchell v. City of Gulfport</u>, No. Civ. A. 101CV449LGRHW, 2005 WL 3116071, at 2 (S.D. Miss. Nov. 18, 2005) (where no expert report is provided, "the expert testimony is limited in scope to the opinions contained in written expert reports or in the physicians' office records).  However, under the current version of Local Rule 26(a)(2)(D), when a plaintiff designates his treating physician as an expert, "[n]o written report is required from such witness[], but the party must

6

disclose the subject matter on which the witness is expected to present evidence ... and a summary of the facts and opinions to which the witness is expected to testify."  L.U. Civ. R. 26(a)(2)(D).  Plaintiff here complied with this requirement and therefore, Dr. Lewis may properly testify as to the matters contained in the expert designation.  See Cuevas v. T&J's Last Minute Seafood Exp., Inc., No. 1:10CV104 LG-RHW, 2011 WL 1898919, 4 (S.D. Miss. May 13, 2011) (in accordance with Local Rule 26(a)(2)(D), treating physician permitted to offer opinion on causation where such opinion was contained in designation, though not in medical records).  The court concludes, therefore, that the motion to strike should be denied.

Having said that, the court recognizes that defendant's position is not clearly contradicted by the express terms of the local rule and was supported by several prior decisions of the court; therefore, in the interest of fairness, the court will grant defendant the opportunity to depose Dr. Lewis, if it chooses to do so, and to designate its own medical expert to address Dr. Lewis' opinions.

Motion to Exclude David Stegall

Plaintiff has designated David Stegall as an expert witness to testify generally in support of plaintiff's allegations of bad faith.  Great American has moved to exclude Stegall's testimony, arguing that for a number of reasons, Stegall's testimony does not

7

meet the requirements of Federal Rule 702 and the standards for implementation of the rule articulated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).[2]

The proponent of expert testimony has the burden of proving that the proffered testimony is admissible. United States v. Fullwood, 342 F.3d 409, 412 (5th Cir. 2003). Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

As a threshold matter, the court must determine whether the proffered witness is qualified to give the expert opinion he seeks

---

[2] Great American initially argued that since it is entitled to summary judgment on plaintiff's bad faith claim, then there is no issue of bad faith and therefore no reason for Stegall to testify. As the court has concluded that defendant's motion for summary judgment on plaintiff's bad faith claim should be denied, the court considers defendant's alternative challenge to Stegall's testimony under Rule 702 and Daubert/Kumho Tire.

to express.  See Kumho Tire, 526 U.S. at 156, 119 S. Ct. 1167; Daubert, 509 U.S. 588, 113 S. Ct. 2786.  Even where the witness is qualified, before his testimony can be admitted under Rule 702, the court "must conduct a preliminary inquiry to ensure that the testimony is both relevant and reliable."  Vargas v. Lee, 317 F.3d 498, 500-501 (5th Cir. 2003) (citing Kumho Tire).  "The objective of this gatekeeping requirement 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  Id. (quoting Kumho Tire, 526 U.S. at 152).

In Daubert, the Supreme Court set forth an illustrative, non-exhaustive list of factors that may be considered by the district court when determining whether the expert testimony is sufficiently reliable.  These factors include whether the theory or technique that forms the basis of the expert's testimony: (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation; and (4) is generally accepted within the relevant scientific or technical community. Daubert, 509 U.S. at 593-94.  These factors, however, "may or may not be pertinent in assessing reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Kumho Tire, 526 U.S. at 150.

In addition to reliability, Daubert requires that expert testimony be relevant. <u>Daubert</u>, 509 U.S. at 591. Expert testimony is relevant under Daubert if it assists the trier of fact in understanding the evidence. <u>Id.</u> Having reviewed the parties' submissions, the court finds the following with regard to Stegall's proposed testimony.[3]

First, Stegall is not a medical professional and is plainly not qualified to and will not be permitted to offer any opinion relating to Mr. Rosamond's medical condition and treatment, including the nature of any injury or medical condition sustained or suffered at any time by Mr. Rosamond, or the cause of any condition or the need for medical treatment, including, but not limited to his opinions that the incident on January 2, 2007 was "the cause of the need for surgery"; that the injury plaintiff sustained required him "to sustain essential surgical treatment ... as ordered by Dr. Lewis"; that the incident "aggravated, rendered active, or otherwise set in motion (or cause to flare up or light up) a dormant pre-existing physical condition of nonunion"; that "[a]t no time did Mr. Rosamond suffer an aggravation/non-union of his fusion prior to January 2, 2007";

---

[3] The court notes that in his response to the motion, plaintiff does little more than tout Stegall's thirty-plus years' experience in the insurance industry as demonstrating his qualifications to offer opinions. However, defendant has not challenged Stegall's qualifications per se; rather, it challenges the relevance and reliability of his proposed opinions.

that plaintiff's visit to his doctor in November of 2006 was not for the same condition as his visits in January 2007; or that the health condition for which plaintiff sought coverage under the policy was "for the January 2, 2007 aggravation of his nonunion." His lack of medical training likewise forecloses him from offering any opinion as to whether defendant's expert(s) or the doctor who performed the IME had sufficient medical information on which to base a diagnosis; a medical expert would be required for this purpose.[4]

In a related vein, Stegall is precluded from offering an opinion that any injury suffered by plaintiff on January 2, 2007 was not caused by and did not result from any pre-existing condition. His opinion in this regard is ostensibly based on his opinion as to the proper interpretation of the policy, as well as his view of the medical evidence. However, as Great American's policy clearly unambiguously defines what constitutes a "preexisting condition," Stegall's opinion as to "the usual and customary meaning of the term" would be immaterial and unhelpful. See American Home Assur. Co. v. Cat Tech, L.L.C., 717 F. Supp. 2d 672, 681–682 (S.D. Tex. 2010) (stating that expert testimony on

---

[4] That is not to say he is precluded from testifying as to an industry standard which requires that a carrier provide all pertinent medical records for purposes of obtaining a reliable result from an independent medical examination; but it is not for Stegall to opine either as to what specific records qualify as pertinent or as to the accuracy of any medical diagnoses or opinions rendered in the absence of such records.

11

proper interpretation of contract terms "is admissible only if the contract language is ambiguous or involves a specialized term of art, science, or trade"). And it is for the jury, not Stegall, to weigh the evidence and make its own decision as to whether plaintiff's visit to Dr. Soriano in November 2006 was for the same condition as his visits to the doctor following the incident on January 2, 2007. Likewise, it will be for the jury to decide whether plaintiff, in fact, suffered an "occupational injury" on January 2, 2007, as that term is defined in the policy.

Stegall may not testify with respect to Great American's duties in handling plaintiff's claim or any claimed continuing duty to reevaluate the claim; it is for the court, and not Stegall, to determine, and to instruct the jury, as to the carrier's legal obligations to its insured. However, Stegall may testify regarding relevant industry standards applicable to the adjustment of claims and may address whether defendant's conduct conformed to those standards;[5] but he will be precluded from asserting any opinion that defendant lacked "good faith" or that it acted in "bad faith" in adjusting and denying the claim, as

---

[5] The court would note on this point that to date, it has not been persuaded that Stegall should be precluded from referencing the model code adopted by the National Association of Insurance Commissioners solely because it does not imply a private right of action. But see Jones v. Reynolds, 2008 WL 2095679, at *11 (N.D. Miss. May 16, 2008) (holding that expert could not testify as to violations of National Association of Insurance Commissioners model code since such code does not imply a private cause of action).

this is patently a legal conclusion.  See 200 South Broad Street, Inc. v. Allstate Ins. Co., 2009 WL 2028349, 1 (E.D. La. 2009) (holding that expert could testify as to industry standards of an insurance company's adjustment of a claim, but he could "not testify as to whether the defendant's behavior constituted bad faith nor draw any legal conclusions whatsoever as to the defendant's conduct").  And Stegall may not testify that plaintiff's claim was covered and payable under the policy, or that Great American improperly denied benefits, as these determinations are properly reserved for decision by the jury.  In short, Stegall is not precluded from testifying as to the applicable standard of conduct and explaining the conduct of the persons involved in the adjustment of plaintiffs' claim, but he is not permitted to draw conclusions from those standards and explanations of conduct, as this is a determination for the jury.  See id.

Neither will Stegall be allowed to suggest that the Great American policy at issue is controlled in any way by the Mississippi Workers' Compensation Act, or to suggest that Great American violated any duties applicable to workers' compensation policies.  Any such opinion is without foundation as the policy at issue herein is not a workers' compensation policy.  The terms of the policy, and not Mississippi workers' compensation laws, define the coverage the policy provides.[6]

---

[6] Along these lines, and with respect to the policy itself, the court is concerned with Stegall's apparent

Beyond these broad categories, Stegall's report contains a number of opinions for which there appears to be no factual basis and/or which apparently have no bearing on the facts of this case, and which are therefore immaterial and inadmissible. See Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). This includes his proposed opinions that Great American failed to ensure that the policy provision Great American was relying on to deny coverage had not been held invalid or enforceable; that Great American misrepresented relevant policy provisions to Mr. Rosamond; and that "[i]nsurance companies have a practice of ordering IMEs from a physician such as Dr. Guy Vise, Jr., who routinely supports Great American."

As should be manifest from the foregoing, while the court will not grant defendant's motion to exclude Stegall as a witness, the permissible subjects on which he may be permitted to testify are far more limited than those proposed by plaintiff. The court has undertaken herein to delineate permissible and impermissible subjects to the extent possible in advance of plaintiff's offering Stegall's testimony at trial. The court recognizes, though, that there may be certain topics or specific testimony which it has

---

unfamiliarity with specific terms of Great American's policy with respect to the types of benefits provided, so much so that if his testimony were not already precluded on other bases, the court would likely prevent him from offering his interpretation of the policy or expressing his view of Great American's unreasonableness in failing to offer plaintiff a fair settlement under the policy.

14

failed to address. Accordingly, additional objections to specific testimony may be raised at trial.

Conclusion

Based on the foregoing, it is ordered that defendant's motion for summary judgment is denied; that defendant's motion to strike Dr. Lewis' affidavit is denied;[7] and that defendant's motion to exclude testimony of David Stegall is granted in part and denied in part as set forth herein.

SO ORDERED this 4th day of August, 2011.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Defendant shall have thirty days within which to depose Dr. Lewis, if desired, and to designate its own medical expert.